UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00777-RGJ

KATHRYN L. PRY,
In Her Capacity as Chapter 7 Trustee of
the Bankruptcy Estate of Elizabeth Harac; and
ELIZABETH HARAC                                                                           PLAINTIFFS

v.

NORTON HOSPITALS, INC.,
d/b/a Norton Hospital;
JORGE L. RODRIGUEZ, M.D.;
UNIVERSITY SURGICAL ASSOCIATES, P.S.C.; and
UNIVERSITY OF LOUISVILLE PHYSICIANS, INC.                                                 DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Transfer Venue (DN 18), Defendants' Motion to Remand (DN 19), and Plaintiffs' Motion for Status Conference (DN 29). These matters are ripe for adjudication. For the reasons below, Defendant's motion to remand is **GRANTED**, and Plaintiffs' motions are **DENIED AS MOOT**.

### I.     BACKGROUND

#### A.    Statement of Facts

In December 2013, Plaintiff Elizabeth Harac ("Harac") underwent a lap-band procedure under the care of Norton Hospital Inc. d/b/a Norton Hospital ("Norton"), Dr. Jorge L. Rodriguez ("Dr. Rodriguez"), University Surgical Associates PSC ("Surgical Associates"), and University of Louisville Physicians, Inc. (collectively, "Defendants"). (Pls.' Resp. Def.'s Mot. Remand 3, DN 23). Harac experienced severe complications during the surgery and allegedly spent nine minutes without a heartbeat. (Pls.' Resp. Def.'s Mot. Remand 3). She claims that her medical

1

complications are attributable to Defendants negligence and caused her permanent mental and physical disability. (Pls.' Resp. Def.'s Mot. Remand 3-4).

On September 30, 2014, Harac and her husband, Ian Harac, filed for Chapter 7 bankruptcy, Case No. 14-91976-BHL-7A, in the United States Bankruptcy Court for the Southern District of Indiana (the "Indiana Bankruptcy Court"). (Pls.' Resp. Def.'s Mot. Remand 4). While Harac highlights the incompetency of her later suspended bankruptcy attorney, it is uncontested that she did not disclose her cause of action against Defendants to the Indiana Bankruptcy Court. (Pls.' Resp. Def.'s Mot. Remand 4).

In December 2014, Harac filed the present medical malpractice action, Case No. 14-CI-006247, against Defendants in Jefferson Circuit Court (the "State Action"). (Pls.' Resp. Def.'s Mot. Remand 4). In January 2015, the Indiana Bankruptcy Court, presumably without knowledge of the pending State Action, granted Harac full discharge of her debts. (Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer, DN 19). In October 2016, Defendants learned that Harac failed to disclose her medical malpractice claim to the Indiana Bankruptcy Court, and they then moved for summary judgment on judicial estoppel grounds. (Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer 2). In January 2017, Plaintiff Kathryn Pry ("Pry"), in her capacity as Trustee, reported Harac's previously undisclosed medical malpractice claim to the Indiana Bankruptcy Court, which led to the re-opening of the bankruptcy action and adding Pry to the State Action as real party in interest. (Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer 2-3; Pls.' Resp. Def.'s Mot. Remand 5).

On July 31, 2017, and August 8, 2017, after full briefing by the parties and oral arguments, the state court judge granted Defendants' motions for summary judgment based on judicial estoppel for Harac's failure to list the malpractice claim as an asset in her bankruptcy petition.

(Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer 3; Pls.' Resp. Def.'s Mot. Remand 5). The Orders held that "Plaintiff be judicially estopped and the trustee be substituted as the proper party with any funds in excess of that required to pay her creditors being refunded to the Defendant[s]." (Notice Removal Ex. D, at 3-4, DN 1-4; Notice Removal Ex. E, at 2, DN 1-5).

B. **Procedural History**

On September 7, 2017, Harac filed notice of removal in the United States Bankruptcy Court for the Western District of Kentucky (the "Kentucky Bankruptcy Court"), Case No. MP-17-90001-THF, which in turn transferred the case to this Court.[1] (Notice Removal, DN 1; Transfer Order, DN 3). Harac's stated purpose for removal was to have this Court transfer the matter to the Indiana Bankruptcy Court to, first, rule on judicial estoppel and, second, to vacate and remand back to Jefferson Circuit Court to continue the State Action. (Notice Removal 4-5). That same day, Harac moved to transfer the case to the Indiana Bankruptcy Court, which Pry later joined. (Pls.' Mot. Transfer, DN 18; Pls.' Motion Joinder, DN 20). On September 21, 2017, Norton objected to the motion to transfer, moved to remand this case back to Jefferson Circuit Court, and moved for attorneys' fees. (Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer). Norton then filed a supplemental brief in support of its motion to remand. (Def.'s Suppl. Br., DN 21). Plaintiffs collectively responded, and Norton replied. (Pls.' Resp. Def.'s Mot. Remand; Def.'s Reply Mot. Remand, DN 22).[2] Dr. Rodriguez and Surgical Associates joined in support of Norton's motion to remand. (Defs.' Mot. Joiner, DN 24). Finally, on June 13, 2019, Plaintiffs moved for a status conference. (Pls.' Mot. Status Conference, DN 29).

---

[1] The dates in this section are based on filings in the Kentucky Bankruptcy Court, which do not align with the filing dates as listed in this Court's docket.
[2] The order of these filings appears to have been incorrectly reversed when bankruptcy court transferred the docket to this Court.

3

## II. DISCUSSION

### A. Defendants' Motion to Remand

This case comes before the Court after a circuitous path. In essence, Plaintiffs want this Court to transfer jurisdiction over this matter to the Indiana Bankruptcy Court to resolve the merits of a legal issue that the Jefferson Circuit Court has already decided. For the reasons below, Plaintiffs removal was untimely under Fed. R. Bankr. P. 9027. In any event, neither this Court nor the Indiana Bankruptcy Court has the power to sit in review of the decision reached by the Jefferson Circuit Court under the *Rooker-Feldman* doctrine.

#### 1. *Timeliness of Removal*

Federal law imposes a time limitation on when a party may remove a case filed in state court to federal court. To justify removal to this Court, Plaintiffs rely on 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027, which govern removal of claims related to bankruptcy. (Notice Removal 2). Because Harac's bankruptcy petition was filed in September 2014 and the state action was initiated afterward in December 2014, Fed. R. Bankr. P. 9027(a)(3) governs the timeliness of removal.

Under the bankruptcy rules, a notice of removal must be filed either within "(A) 30 days after receipt . . . of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons." Fed. R. Bankr. P. 9027(a)(3). *See In re Lowenbraun*, 313 B.R. 408, 411 (Bankr. W.D. Ky. 2004) ("Generally, when the removing party is the plaintiff, or third party plaintiff in this case, the thirty day window begins to run from the receipt of the answer or responsive pleading from the defendant." (citation omitted)). The parties agree that this

rule governs the timeliness analysis, but they disagree about when the 30-day clock should begin. (Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer 4-6; Pls.' Resp. Def.'s Mot. Remand 7-9).

As the Advisory Notes to Fed. R. Bankr. P. 9027(a)(3) state, the "time for filing the application for removal begins to run on *receipt of the first pleading* containing the removable claim or cause of action." Fed. R. Bankr. P. 9027 advisory committee's note (emphasis added). Here, although the parties first learned of the judicial estoppel issue in late 2016, the first *pleading* raising judicial estoppel was an amended answer filed in Jefferson Circuit Court on August 1, 2017.[3] *See* Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."); *In re Boyer*, 108 B.R. 19, 25 (Bankr. N.D.N.Y. 1988) ("Fed. R. Bankr. P. 9027(a)(3) directs that the time for filing a removal petition for this post-petition fraud action is the shorter of thirty days after receipt of the initial pleading or summons. While compliance might at first appear awkward when the removal proponent is the plaintiff in the action sought to be removed, the Court finds that, given 28 U.S.C. § 1452(a)'s extension of removal to 'a party', an initial pleading includes an answer."); *see also Bigelow v. RKO Radio Pictures, Inc.*, 16 F.R.D. 15, 17 (N.D. Ill. 1954) ("A motion is not a pleading." (citation omitted)). Because the state court action was not removed to federal court until more than 30 days later on September 7, 2017, the removal was untimely, and Plaintiffs must seek further review of the

---

[3] While the parties did not provide this pleading, the Court takes judicial notice of the amended answer filed on August 1, 2017, because it is part of the public record in the State Action, Case No. 14-CI-006247. *See Watson v. Shumate*, No. 3:18-CV-P460-GNS, 2018 WL 6728572, at *1 n.1 (W.D. Ky. Dec. 21, 2018).

5

interlocutory order in the Kentucky state courts.[4] *See* 28 U.S.C. § 1452(a); Fed. R. Bankr. P. 9027(a)(3).

## 2. **Rooker-Feldman *Doctrine***

Through its decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court established the general rule that district courts lack jurisdiction to review state court judgments. Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). This doctrine, however, does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). Rather, the doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. This doctrine applies to both final judgments and interlocutory orders. *See Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 462 (6th Cir. 2003) ("We reject this

---

[4] The Court rejects Plaintiffs' contention that adding the bankruptcy trustee as a party had any legal significance impacting removal. (Notice Removal 3; Pls.' Resp. Def.'s Mot. Remand 7). When a bankruptcy trustee intervenes in an action as the representative of the bankruptcy estate, the trustee merely replaces the debtor and gains no additional rights. *See In re Fair Fin. Co.*, 834 F.3d 651, 675 (6th Cir. 2016) ("Pursuant to 11 U.S.C. § 541(a)(1), a 'trustee stands in the shoes of the debtor and has standing to bring any action that the bankrupt could have brought had he not filed a petition for bankruptcy." (citation omitted)); *Guar. Residential Lending, Inc. v. Homestead Mortg. Co.*, 291 F. App'x 734, 741 (6th Cir. 2008) ("A bankruptcy trustee cannot hold rights greater than those that could have been held by the debtor." (citing 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.04 (Alan R. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008))); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) ("A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted . . . and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests greater than those of the debtor." (citation omitted)).

argument and join with the majority of circuits that have concluded that the *Rooker-Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts. First, like other federal courts of appeals, we find it difficult to believe that lower federal courts are prohibited from reviewing final state-court judgments, but yet are somehow permitted to review interlocutory decisions.").

When applying this doctrine, the Sixth Circuit looks to the source of the plaintiff's injury. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). Relatedly, the source of a plaintiff's harm is closely connected to the relief that is requested. *Id*. Finally, even if not raised by the parties, this doctrine is jurisdictional and must be considered by the Court *sua sponte*. *Crawford v. Countrywide Home Loans, Inc*., 647 F.3d 642, 646 (7th Cir. 2011).

### a. Source of Injury

The relief that Plaintiffs explicitly seek here is to re-litigate before the Indiana Bankruptcy Court the judicial estoppel determination already made by the Jefferson Circuit Court.[5] (Notice Removal 5). In fact, the only way for Plaintiffs to receive a favorable outcome here is for the Indiana Bankruptcy Court to reach a different conclusion than the Jefferson Circuit Court, where Plaintiffs have already fully litigated judicial estoppel, including extensive legal filings and an oral argument. (Notice Removal Ex. C, at 8-9, DN 1-3; Def.'s Mot. Remand & Resp. Pls.' Mot. Transfer 3). Plaintiffs now request that this Court transfer the matter to the Indiana Bankruptcy

---

[5] The orders of the Jefferson Circuit Court granting summary judgment on judicial estoppel grounds were not "final and appealable." Ky. R. Civ. P. 54.02(1).

7

Court to have a second bite at that very same apple. *See Exxon Mobil Corp.*, 544 U.S. at 294. Clearly, the state court ruling is thus the source of Plaintiffs' injuries. *See In re Isaacs*, 895 F.3d 904, 912-13 (6th Cir. 2018) ("This request for relief effectively asks the bankruptcy court to vacate the state-court judgment, and thus it clearly identifies the state-court judgment as the source of [the plaintiff's] injury.").

### b. Bankruptcy Context

Applying the *Rooker-Feldman* doctrine to this matter is somewhat complicated because it is inextricably entwined with a pending bankruptcy action, which Congress has suggested should be mainly a federal realm. *See* 28 U.S.C. § 1334. In *In re Hamilton*, 540 F.3d 367 (6th Cir. 2008), the Sixth Circuit analyzed the interplay between the *Rooker-Feldman* doctrine and bankruptcy jurisdiction. In *Hamilton*, a state court ordered a debtor to indemnify his creditor even though that debt had been previously discharged in bankruptcy. *Id*. at 370. When the debtor attacked that decision in federal court, the bankruptcy court applied the *Rooker-Feldman* doctrine which the district court reversed, holding that the state court judgment impermissibly modified the previous bankruptcy court's debt discharge order. *Id* at 371. The Sixth Circuit identified the issue as "a tension between . . . the *Rooker-Feldman* doctrine's aim to preserve state-court authority, and 11 U.S.C. § 524(a)'s aim to preserve the bankruptcy court's authority." *Id.* at 373. The Sixth Circuit ultimately concluded that insofar as a state court judgment *modifies* a bankruptcy court's discharge order, it is *void ab initio* and the *Rooker-Feldman* doctrine would not bar federal court jurisdiction. *Id.* at 376.

The exception as explained in *Hamilton* does not apply to this case. The Jefferson Circuit Court's application of judicial estoppel in no way modified the discharge order of the Indiana Bankruptcy Court. That bankruptcy court was not informed of Harac's medical negligence claim,

8

so the discharge order could not have addressed how proceeds from that claim would be distributed amongst Harac's creditors. In other words, the Jefferson Circuit Court judgment in no way conflicted with the discharge order previously entered by the Indiana Bankruptcy Court. Thus, it cannot be said that the state court impermissibly encroached on federal jurisdiction over this issue.[6]

### c. Jurisdiction

Finally, the Court must address jurisdiction. Plaintiffs argue that the state court *lacked subject matter jurisdiction* to reach the merits at all because the Indiana Bankruptcy Court had *exclusive jurisdiction* over the issue based on Seventh Circuit precedent.[7] (Notice Removal 4).

---

[6] This Court's decision does not address the merits of Jefferson Circuit Court's ruling on the underlying judicial estoppel issue. This Court recognizes that Plaintiffs contend that the state court's ruling is inconsistent with case law from the Seventh Circuit, which would control before the Indiana Bankruptcy Court. *See Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015) ("Some omissions will be culpable and should be punished, if that can be done without injuring the creditors too. But other omissions will be innocent—based on poor communication between bankruptcy counsel and tort counsel, or based on a belief that the tort claim will not be valuable—and should not be punished.")

[7] To support their premise that exclusive jurisdiction rested with the Indiana Bankruptcy Court, Plaintiffs point to a quote from a recent Seventh Circuit opinion, noting: "whether [debtor] tried to hide the claim in the bankruptcy is a question *more appropriately addressed* to the bankruptcy judge, who can decide (if the Trustee prevails in this tort suit) what disposition to make of any proceeds that remain after paying counsel and the creditors." *Metrou*, 781 F.3d at 360 (emphasis added). To begin, it is a stretch to conclude that a bankruptcy court has *exclusive jurisdiction* over an issue just because the Seventh Circuit noted that the issue is "more appropriately addressed to the bankruptcy judge." In fact, several non-bankruptcy courts, including the Seventh Circuit, have since cited *Metrou* without holding that *only* the bankruptcy court could decide judicial estoppel. *See Novotny v. Plexus Corp.*, 777 F. App'x 164, 165 (7th Cir. 2019) ("The district judge did not abuse its discretion when it enforced judicial estoppel against [plaintiff]. Where a plaintiff seeks to benefit from an intentional omission from an earlier bankruptcy proceeding, judicial estoppel is appropriate, so long as estoppel would not adversely affect a litigant's creditors." (citing *Metrou*, 781 F.3d at 360)); *Ellis v. Alexander*, No. 16-CV-05155, 2018 WL 1942650, at *4 (N.D. Ill. Apr. 25, 2018) (district court applying the good-faith rule from *Metrou* rather than leaving that determination up to the bankruptcy judge); *In re Bushberger*, 588 B.R. 44, 49 (Bankr. E.D. Wis. 2018) ("[I]t is for the court presiding over a subsequent legal proceeding to consider whether a plaintiff is able to prosecute an unscheduled lawsuit from an earlier bankruptcy case."). *But see Herrera-Nevarez v. Ethicon, Inc.*, No. 17-C-3930, 2017 WL 2591989, at *4 (N.D. Ill. June 15, 2017) ("[T]he Seventh Circuit's clear statements that the issue of the debtor's intent is irrelevant

9

This argument holds little weight, however, because the state court simply applied judicial estoppel to a claim asserted by Plaintiffs in the state court action. It was, of course, the forum chosen by Harac in the first place. State courts have consistently relied on judicial estoppel defenses without running afoul of any claims that they lack jurisdiction because the defense relates to a bankruptcy case. *See, e.g.*, *Seymour v. Collins*, 39 N.E.3d 961, 982 (Ill. 2015); *McCallister v. Dixon*, 303 P.3d 578 (Idaho 2013); *Hamm v. Norfolk S. Ry. Co.*, 52 So. 3d 484 (Ala. 2010); *Benton v. Benton*, 629 S.E.2d 204 (Ga. 2006); *Ledesma v. AT&T Corp.*, No. 2016-CA-000695-MR, 2018 WL 480764, at *6 (Ky. App. 2018); *Morgan Cty. Hosp. v. Upham*, 884 N.E.2d 275 (Ind. Ct. App. 2008); *Bartley-Williams v. Kendall*, 138 P.3d 1103, 1107 (Wash. Ct. App. 2006); *Int'l Engine Parts, Inc. v. Feddersen & Co.*, 75 Cal. Rptr. 2d 178, 184 (Cal. Ct. App. 1998). Moreover, *Rooker-Feldman* applies with equal force to state jurisdictional determinations. *See Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("[T]he Illinois state courts were competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene. If a state court had violated constitutional jurisdictional limits, [plaintiff] could have brought that up with the Supreme Court after exhausting his state court remedies." As a result, the *Rooker-Feldman* doctrine precludes federal court jurisdiction over the issues raised here.

### d.  Conclusion

In conclusion, the relief sought by Plaintiffs is improper under the *Rooker-Feldman* doctrine because they are inviting federal court review of the Kentucky state court's decision. To extent that Plaintiffs wish to seek review of the Jefferson Circuit Court's interlocutory order, they may ask the state trial court to reconsider its decision or appeal that decision in the Kentucky

---

in determining whether the trustee can pursue the claim and that the issue is best determined by the bankruptcy court.").

appellate courts once that order becomes final and appealable.  *See* Ky. R. Civ. P. 54.02(1); *In re Isaacs*, 895 F.3d at 913 ("Isaacs's recourse on this claim was to the Kentucky state appellate courts, not the federal bankruptcy court.").

### B. Plaintiffs' Motion to Transfer Venue/Plaintiff's Motion for Status Conference

Because the Court will grant the motion to remand, it is unnecessary to address Plaintiffs' motion to transfer venue and motion for status conference.  This Court will deny these motions as moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Remand (DN 19) is **GRANTED**, and this matter is **REMANDED** to Jefferson Circuit Court.  The Clerk shall strike this matter from the active docket.

2. Plaintiffs' Motion to Transfer Venue (DN 18) and Plaintiffs' Motion for Status Conference (DN 29) are **DENIED AS MOOT**.

cc: counsel of record
Jefferson Circuit Court Clerk (Civil Action No. 14-CI-06247)